United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 20, 2021

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **FATIH OZCELEBI** | § | **CASE NO: 20-70295** |
| Debtor | § | |
| | § | **CHAPTER 11** |

<u>**MEMORANDUM OPINION**</u>

Many professionals become involved in the administration of a bankruptcy case or in the representation of the debtor, debtor in possession, trustee, examiner, creditors or committees. The level of court review of the debtor's choice of an attorney varies, dependent upon the chapter for relief filed. In Chapter 11 cases, section 327(a) governs the employment of professionals by the debtor in possession or trustee. In a subchapter V case, however, section 1195 of The Small Business Reorganization Act of 2019 modifies section 327(a) by providing that "a person is not disqualified for employment under section 327 of this title, by a debtor solely because that person holds a claim of less than $10,000 that arose prior to commencement of the case."[1] What section 1195 does not answer is whether, in a subchapter V case, a non-disqualifying debtor's counsel is entitled to make a post-petition draw on a pre-petition retainer to pay a $9,999 pre-petition claim.

Here, the Court has been tasked with determining whether Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C. may drawdown its pre-petition retainer in the amount of $69,394.48 which includes $9,999 in unbilled time notwithstanding Dr. K.V. Chowdary, M.D., individually and doing business as Valley Gastroenterology Clinic, P.A., and Valley Gastroenterology, Clinic, P.A.'s objections that the $9,999 is nothing more than a general unsecured claim which is likely

---

[1] 11 U.S.C. § 1195.

avoidable as section 547 preference; and that the entire amount of $69,394.48 is subject a section 548 fraudulent transfer claim because Fatih Ozcelebi's medical practices, business real estate, and the vast majority of his earned income and other income for over a decade was fraudulently transferred to a so-called "spendthrift" trust that was in fact a self-settled trust.

On June 23, 2021, the Court held an evidentiary hearing and at the conclusion of the hearing ordered briefing and took the matter under advisement. All briefs have been submitted and the matter is ripe for determination. For the reasons set forth herein, Dr. K.V. Chowdary, M.D., individually and doing business as Valley Gastroenterology Clinic, P.A., and Valley Gastroenterology, Clinic, P.A.'s objections are overruled and Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C.'s first fee statement and first interim application for compensation and expenses for the period from October 17, 2020 through March 31, 2021, seeking the amount of $188,358.11, of which $184,898.50 is for services rendered, and $3,459.61 is for reimbursement of out-of-pocket expenses, are approved. Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C may draw down the entirety of its $69,394.48 retainer which includes $9,999 in unbilled time. As for Dr. K.V. Chowdary, M.D., individually and doing business as Valley Gastroenterology Clinic, P.A., and Valley Gastroenterology, Clinic, P.A.'s objection that the first interim application includes fees that are duplicative of efforts and also excessive is left for another day as such objection has been reserved to such time as Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C. files a final fee application and thus is not ripe for determination.

## I.  Findings of Fact

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, which incorporates Federal Rules of Civil Procedure 52 and 9014. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.

To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

### A. Procedural History

1. On October 16, 2020, Dr. Fatih Ozcelebi, M.D. ("*Ozcelebi*" or "*Debtor*") filed his subchapter V petition under chapter 11 and "Disclosure of Compensation of Attorney for Debtor*"* ("*Disclosure*").[2] Debtor's Disclosure was updated on December 9, 2020.[3] On the same date, Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C. ("*CHWWA*") filed its disclosure of compensation and listed a $75,000 retainer ("*Retainer*").[4]

2. On October 20, 2020, Catherine Stone Curtis, the chapter 11, subchapter V trustee ("*Trustee*"), was appointed to the above-numbered case.[5]

3. On November 9, 2020, Debtor sought application to employ CHWWA as his bankruptcy counsel ("*Application*").[6] In the Application, CHWWA disclosed that of the $75,000 Retainer, it applied $5,605.52 in earned fees and expenses.[7] The Application further stated that "[d]ue to an internal miscommunication within CWHWA, as of the filing of Debtor's bankruptcy, CHWWA was owed fees and expenses by the Debtor in the amount of $21,696.91 for unreleased time that was not billed prior to the bankruptcy filing. Pursuant to § 1195, CHWWA wrote-off $11,697.91. CHWWA seeks to draw down the $9,999 from the retainer it holds as allowed under § 1195."[8]

4. On December 9, 2020, CHWWA filed its amended disclosure of compensation acknowledging the Retainer of $75,000 and noting that "the $9,999 was not billed pre-petition that will be included in the first retainer draw of CHWWA."[9]

5. On December 16, 2020, the Court held a hearing on the Application and after Dr. K.V. Chowdary, M.D, individually and doing business as Valley Gastroenterology Clinic, P.A. ("*Chowdary*") withdrew the oral objection,[10] the Court granted the Application ("*Retention*

---

[2] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C. ECF Nos. 1 and 2 respectively.
[3] ECF No. 36.
[4] ECF No. 2.
[5] ECF No. 6.
[6] ECF No. 20.
[7] *Id.* at 4, *¶ 13.*
[8] *Id.* at 5, *¶ 14.*
[9] ECF No. 36.
[10] ECF Nos. 25 and 41, respectively.

*Order*").[11]  The Retention Order authorized CHWWA to submit monthly interim fee statements and draw down on the Retainer subject to final approval by this Court every 120 days through a fee application.[12]

6.      On December 15, 2020, Chowdary filed his "Motion to Convert or Dismiss Case, or Alternatively, for Authority to Pursue Chapter 5 Causes of Action Against Insiders" ("*Motion to Convert*").[13]

7.      On December 16, 2020, the Court approved Debtor's Application to employ CHWWA as Debtor's counsel.[14]

8.      On January 11, 2021, Chowdary simultaneously filed his "Objection to Debtor's Claimed Exemptions" ("*January 11, 2021 Objection*") and initiated an adversary proceeding against the Debtor seeking to deny discharge of a $1.8 million state court judgment ("*Adversary Proceeding*") pursuant to 11 U.S.C. § 523.[15]  The January 11, 2021 Objection was struck by the Court and refiled by Chowdary on January 12, 2021.[16]

9.      On January 13, 2021, Debtor promulgated his chapter 11, subchapter V plan ("*Plan*").[17]

10.     On January 14, 2021, the Court denied Chowdary's Motion to Convert for failure to show cause within the meaning of the Bankruptcy Code.[18]

11.     On February 5, 2021, Debtor filed his "Joint Emergency Motion for Mediation Order" ("*Joint Motion*").[19]

12.     On February 8, 2021, the Court approved the Joint Motion, and reset the Plan confirmation hearing to March 31, 2021.[20]

13.     On March 10, 2021, CHWWA filed its "First Fee Statement of Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C., Counsel for Debtor, and Notice of Distribution of Prepetition Retainer" ("*First Fee Statement*"), seeking compensation for professional services rendered in the amount of $59,494.00 ("*Fees*"), and for reimbursement of out-of-pocket expenses incurred in the amount of $2,264.33 ("*Expenses*"), for the period from October 17, 2020 through December 31, 2020. [21]

---

[11] ECF No. 41.
[12] *Id.*
[13] ECF No. 39.
[14] ECF No. 41.
[15] ECF No. 64; *Case No. 21-07001, ECF No. 1.*
[16] ECF No. 71.
[17] ECF No. 76.
[18] Min. Entry 01/14/2021.
[19] ECF No. 113.
[20] ECF No. 118.
[21] ECF No. 126.

14.    On March 31, 2021, Chowdary filed his objection to the First Fee Statement ("*Fee Statement Objection*").[22]

15.    On April 30, 2021, the Court held a status conference where the parties announced that the mediation resulted in an impasse.[23]  Additionally, the Court ordered briefing.

16.    On June 1, 2021, CHWWA filed its "First Interim Application of Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C. for Compensation and Expenses for the Period from October 17, 2020 through March 31, 2021" seeking the amount of $188,358.11, of which $184,898.50 is for services rendered, and $3,459.61 is for reimbursement of out-of-pocket expenses ("*First Interim Application*"). [24]

17.    On June 9, 2021, CHWWA filed its brief in response to Chowdary's Fee Statement Objection ("*CHWWA Response to Chowdary's Fee Statement Objection*").[25]

18.    On June 16, 2021, Chowdary filed his brief in support of his Fee Statement Objection.[26]

19.    On June 23, 2021, the Court held a hearing on the First Fee Statement and related objection.

20.    On June 28, 2021, CHWWA filed its certificate of no objection.[27]

21.    On June 29, 2021, Chowdary filed his objection to the First Interim Application ("*First Interim Application Objection*").[28]

22.    On July 6, 2021, CHWWA filed its response to Chowdary's First Interim Application Objection ("*CHWWA Response*").[29]

## II.  Conclusions of Law

### A.  Jurisdiction and Venue

---

[22] ECF No. 131.
[23] Min. Entry 04/30/2021.
[24] ECF No. 153.
[25] ECF No. 155.
[26] ECF No. 156.
[27] ECF No. 169.
[28] ECF No. 170 (With the exception of arguments reserved for a final fee application, Chowdary's First Interim Application Objection is treated as incorporating the arguments from Chowdary's Objection at ECF No. 131).
[29] ECF No. 176.

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[30]  Bankruptcy judges wield constitutional authority to issue final orders and judgments for core proceedings, but can only issue reports and recommendations for non-core proceedings, unless the parties consent to the entry of final orders or judgments on non-core matters.[31]  The application of Plaintiffs' counsel for allowance of compensation and reimbursement of expenses under 11 U.S.C. §§ 105, 327, 329, and 330, Federal Rules of Bankruptcy Procedure 2014 and 2016, and Bankruptcy Local Rule 2014-1, arises under title 11.[32]  Accordingly, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

This Court may only hear a case in which venue is proper.[33]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  The Debtor's chapter 11 case is presently pending in this Court; therefore, venue of this proceeding is proper.

**B.  Constitutional authority to enter a final order**

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order.[34]  In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process

---

[30] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[31] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[32] *See* 28 U.S.C. § 157(b)(1).
[33] 28 U.S.C. § 1408.
[34] *Stern v. Marshall*, 564 U.S. 462 (2011); *but see Wellness Int'l Network v. Sharif*, 135 S. Ct. at 1938–39 (holding that parties may consent to jurisdiction on non-core matters).

of ruling on a creditor's proof of claim."[35]   As indicated above, the pending dispute before this Court is a core proceeding.  The ruling in *Stern* was only limited to the one specific type of core proceeding involved in that dispute, which is not implicated here.  Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[36]

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under § 157(b)(2),[37] this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the dispute at bar.  In *Stern,* the debtor filed a counterclaim based *solely* on state law; whereas, here, the Fee Application is based *primarily* on express provisions of the Bankruptcy Code—11 U.S.C. §§ 105, 327, 329, and 330, Federal Rules of Bankruptcy Procedure 2014, 2016, Bankruptcy Local Rule 2014-1—and judicially-created bankruptcy law interpreting these provisions.  This Court is therefore constitutionally authorized to enter a final order on the Fee Application.  Finally, this Court has constitutional authority to enter a final order on the Fee Application because Chowdary and Ozcelebi have consented, impliedly if not explicitly[38] to adjudication of this dispute by this Court.[39]   The parties have engaged in litigation in front of this

---

[35] *Id.* at 503.

[36] *See, e.g., Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547–48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . We decline to extend *Stern's* limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503).

[37] *See First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.),* 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern's* 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . .").

[38] *See* ECF No. 39, ¶ 2.

[39] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. at 655 ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

Court, including numerous hearings and motions practice.  Neither party has ever objected to this Court's constitutional authority to enter a final order or judgment.  These circumstances unques-tionably constitute implied consent.  Thus, this Court wields the constitutional authority to enter a final order here.

### C.  CHWWA's First Fee Statement and Interim Application

CHWWA's First Fee Statement seeks compensation for professional services rendered in the amount of $59,494, and for reimbursement of out-of-pocket expenses incurred in the amount of $2,264.33, for the period from October 17, 2020 through December 31, 2020 which includes $9,999 in pre-petition unbilled time. [40]  CHWWA's First Interim Application seeks $188,358.11, of which $184,898.50 is for services rendered for the period from October 17, 2020 through March 31, 2021 and $3,459.61 for reimbursement of out-of-pocket expenses.[41]  Chowdary's Fee State-ment Objection contends that (1) CHWWA should not be permitted to draw down on its Retainer to the extent that it consists of funds that were part of an alleged transfer scheme and (2) CHWWA should not be permitted to draw down on a prepetition claim of $9,999 from the Retainer because, in essence, CHWWA merely holds an allowed general unsecured claim against Debtor.[42]  Chow-dary's First Interim Application Objection "renews" its objections from the Fee Statement Objec-tion, and additionally asserts that the "First Interim Application includes fees that are duplication of efforts and also excessive, but reserves those objections to such time as movant files a final fee application."[43]

---

[40] ECF No. 126.
[41] ECF No. 153.
[42] ECF No. 131.
[43] ECF No. 170.

As a preliminary matter, Chowdary's latter objection is not ripe because no final fee application has been submitted and thus, this Court need not entertain it.  The Court must examine Chowdary's Objection in light of the responses made by CHWWA.  CHWWA's brief[44] and Response to Chowdary's Fee Statement Objection,[45] assert five legal arguments in support of drawing down its Retainer, including the $9,999 in pre-petition unbilled fees to wit: (1) Chowdary failed to show that CHWWA is not entitled to interim reimbursement for its professional fees and expenses in light of interim fee reimbursement; (2) to the extent Chowdary's Fee Statement Objection now raises issue with CHWWA's draw-down of $9,999.00 from its pre-petition Retainer, Chowdary waived his right to such argument after the Court approved CHWWA's Application; (3) assuming *arguendo* that Chowdary's Fee Statement Objection was not waived, to the extent Chowdary seeks to recover funds back to Debtor's estate for creditors' benefit, *i.e.*, Chowdary's benefit, CHWWA has a security interest in the retainer; (4)  Chowdary failed to raise a credible argument that CHWWA is in violation of § 1195 of the Bankruptcy Code; and (5) Chowdary's Fee Statement Objection is not ripe because it rests entirely on hypothetical and abstract grounds: it seeks to limit CHWWA drawing on its retainer to the extent such funds were part of Debtor's fraudulent transfer scheme.[46]  Further, CHWWA advances three legal arguments in its Response to Chowdary's First Interim Application Objection asserting that it: (6) fails to apprise CHWWA of the substantive allegations and factual contentions;  (7) fails to comport with notice requirements; and (8) was untimely filed.[47]  The Court will consider each in turn.

**1. Whether CHWWA is entitled to interim reimbursement for its professional fees and expenses in light of Chowdary's fraudulent transfer allegations**

---

[44] *See* ECF No. 131 at 1, ¶¶ 2–3.

[45] ECF No. 176.

[46] ECF No. 155 at 7–8, ¶¶ 21–24.

[47] ECF No. 176.

In attacking the First Fee Statement and First Interim Application, Chowdary advances identical objections in the Fee Statement Objection and First Interim Application Objection.[48] Chowdary asserts that CHWWA is not entitled to interim reimbursement for its professional fees and expenses in this case because "all or any part of the retainer consists of funds that were part of the Debtor's fraudulent transfer scheme."[49]  Indeed, Chowdary alleges that (i) Debtor organized and implemented a years-long scheme of intentional fraudulent transfers, which Debtor apparently believed would protect his assets and earnings from Chowdary's judgment; and (ii) Debtor's medical practices, business real estate, and the vast majority of Debtor's earned income and other income for over a decade was fraudulently transferred to a so-called "spendthrift" trust that was in fact a self-settled trust.[50]  Chowdary, additionally objects to CHWWA's draw-down on the Retainer, including the $9,999, to the extent that all or any part of the Retainer consists of funds that were part of the Debtor's fraudulent transfer scheme.[51]

The procedural history in this case is of particular importance given Chowdary's Objections.  On December 16, 2020, this Court approved Debtor's Application to employ CHWWA as Debtor's counsel.[52]  Pursuant to the Retention Order, "CHWWA may submit monthly interim fee statements and draw-down on the retainer, subject to final approval by this Court every 120 days through a fee application."[53]  Thereafter, CHWWA submitted its First Fee Statement requesting a draw-down on the Retainer.  As argued by CHWWA, the First Fee Statement was made in

---

[48] ECF No. 131; ECF No. 170 (In his First Interim Application Objection, he states that he "previously objected to the Applicant's First Fee Statement and renews its objections therein to the First Interim Application.").
[49] ECF No. 131.
[50] *Id.* at 1, ¶ 2.
[51] *Id.*, ¶ 3.
[52] ECF No. 41.
[53] *Id.* at 2.

accordance with Bankruptcy Local Rule 2016–1 and Article X, Section (a) of the Court's Procedures outlines the process for filing fee statements.

The Bankruptcy Code seeks to protect both debtors and their estates from excessive or unnecessary legal fees."[54]  Such protections are not limitless, however, as § 329(b) tethers the bankruptcy court's reach to attorney compensation.[55]  Where § 329(a) requires a debtor's attorney to disclose a "statement of the compensation paid or agreed to be paid . . . one year before the date of the filing of the petition," § 329(b) allows a court to "cancel any agreement" or return any compensation that "exceeds the reasonable value of any such services . . . ."[56]  Additionally, Bankruptcy Local Rule 2016–1 and Article X, Section (a) of this Court's Procedures outlines the process for filing fee statements.  Where Local Rule 2016–1 states that a fee statement "must describe the services rendered, time spent, hourly rates charged, and the name of the professional or paraprofessional doing the work," this Court's Procedures require that "fee statements . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary."[57]

Here, Chowdary fails to demonstrate to this Court exactly how CHWWA violated either 11 U.S.C. § 329, Bankruptcy Local Rule 2016-1 or this Court's procedures.  Instead, Chowdary alleges serious accusations against Debtor without providing any justification or legal support other than such egregious conduct will be proven later in the Adversary Proceeding.  This Court will not penalize CHWWA for any alleged misbehavior of its client yet to be proven.  Whether

---

[54] *In re Whitley*, 737 F.3d 980, 985–86 (5th Cir. 2013) (quoting *Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005)).

[55] *See* 11 U.S.C. § 329(b); *In re Whitley*, 737 F.3d at 986.

[56] 11 U.S.C. § 329(a)–(b).

[57] *See* BLR 2016–1 and Court Procedures, Judge Eduardo V. Rodriguez, Article X, section (a), respectively.

under § 329, this Court's Retention Order, or the Court's Procedures, CHWWA disclosed the agreed-to compensation to be paid before the petition and detailed the services performed in sufficient detail to apprise an interested party and the Court on the actual, reasonable, and necessary costs of services rendered. Accordingly, Chowdary's Objections that CHWWA is not entitled to interim reimbursement for its professional fees and expenses in this case because "all or any part of the retainer consists of funds that were part of the Debtor's fraudulent transfer scheme" is overruled.

### 2. Whether Chowdary waived any argument regarding CHWWA's draw-down of $9,999 from its pre-petition retainer of $75,000

CHWWA asserts that its Application—promulgated back on November 9, 2020—specifically stated "[p]rior to the filing date, Debtor provided CHWWA a retainer in the amount of $75,000 of which CHWWA has applied $5,605.52 in fees and expenses as part of the retention agreement . . . ."[58] CHWWA states that "[d]ue to an internal miscommunication . . . CHWWA was owed fees and expenses by the Debtor in the amount of $21,696.91 for unreleased time that was not billed prior to the bankruptcy filing. Pursuant to § 1195, CHWWA wrote-off $11,697.91. CHWWA requests to pay the $9,999 from the retainer it holds as allowed under § 1195."[59]

Congress implemented the Small Business Reorganization Act of 2019 ("*SBRA*"), effective February 19, 2020.[60] The SBRA includes new Code § 1195, which creates an exception to the *per se* disqualification under 11 U.S.C. § 327(a) of a debtor's pre-petition counsel for holding an unpaid claim against the debtor of $10,000 or less as of the petition date.[61] Unlike under § 327(a), a

---

[58] ECF No. 20 at 4, ¶ 13.
[59] ECF No. 155 at 6–7, ¶ 20.
[60] Small Business Reorganization Act of 2019, Pub. L. No. 116-54, Aug. 23, 2019, 133 Stat. 1079, 1087 ("This Act and the amendments made by this Act shall take effect 180 days after the date of enactment of this Act.").
[61] 11 U.S.C. § 1195.

professional person who holds a claim against the debtor, or is otherwise not disinterested, may qualify for employment to assist the trustee in a subchapter V proceeding, as long as that claim does not exceed $10,000. [62]   However, § 1195 says nothing about the status of a non-disqualifying prepetition claim of a debtor's attorney after the bankruptcy is filed.   Nevertheless, disqualification is not at issue here because CHWWA is not disqualified and is already employed.[63]   The issue boils down to whether CHWWA may draw-down the entire $9,999 portion of the Retainer.

CHWWA first argues that to the extent Chowdary's Fee Statement Objection now raises issue with CHWWA's draw-down of $9,999 from its pre-petition Retainer, Chowdary waived his right to such argument after the Court approved CHWWA's Application.[64] CHWWA contends that when Debtor filed the application to employ CHWWA, Chowdary was made aware that a draw-down on a pre-petition retainer was expected, and would be performed according to the Bankruptcy Code.[65]   As such, CHWWA argues that Chowdary had notice and the opportunity to object at that time but declined.[66]   In response, Chowdary asserts that he did not waive his objection to CHWWA's Fee Statement.[67]   Instead Chowdary contends that this Court's Retention Order makes no finding that CHWWA was entitled to make a post-petition draw on the pre-petition Retainer for its pre-petition claim, and CHWWA's Application requested no such finding or ruling.[68]

---

[62] 11 U.S.C. § 1195.
[63] ECF Nos. 25, 41.
[64] ECF No. 155 at 7, ¶ 21.
[65] *Id.*
[66] *Id.*
[67] ECF No. 156.
[68] *Id.*

As previously noted, this Court's Retention Order permits CHWWA to "submit monthly interim fee statements and draw-down on the Retainer,"[69] but it does not preclude Chowdary from objecting to those fee statements.  In fact, the Retention Order is explicit that fee applications filed by CHWWA are "subject to final approval by this Court."[70]  While Chowdary may have waived his objection to the mere employment of CHWWA, Chowdary's objection to the classification of the fees sought to be drawn down in the First Fee Statement is permitted.  Additionally, the totality of the fees sought remain subject to a final fee application.  Accordingly, the Court finds that Chowdary did not waive his right to bring the objections herein.

### 3. Whether CHWWA has a security interest in the Retainer

Section 1195 is silent about the status of a non-disqualifying pre-petition claim of a debtor's attorney after the bankruptcy is filed.  It merely modifies the disinterestedness requirement of §327(a) in a subchapter V proceeding.  So, is the Retainer a secured claim as CHWWA suggests?  An administrative claim, which permitting the implementation of the First Fee Statement seems to call for?  Or just a garden-variety unsecured claim?  The Code does not provide any guidance on this issue.  As for the potential assertion of secured status, Chowdary argues that CHWWA's Application and the affidavit supporting that Application make no mention of the Retainer being held as security for payment of future fees and CHWWA's assertion now of secured status as a basis to permit the normally impermissible payment of a pre-petition claim should be denied.[71]

---

[69] ECF No. 41.
[70] *Id.*
[71] ECF No. 156 at 2.

CHWWA, on the other hand, asserts that its retainer agreement with Debtor stipulated CHWWA was to have a "security retainer," which is still property of the estate.[72]  CHWWA further asserts that under Texas Business and Commerce Code § 9.203(a), CHWWA's security interest attached when the collateral came into possession of CHWWA pursuant to the engagement letter, value was given, and the Debtor has rights in the collateral.[73]  Here, CHWWA asserts that the value accorded to Debtor was CHWWA's agreement to represent the Debtor through the bankruptcy case in accordance with all professional and ethical precepts. Accordingly, argues CHWWA, it holds a security interest in the Retainer, and upon approval by the Court, may apply its retainer to its approved fees.[74]

Chowdary raises two primary objections to CHWWA's alleged security interest, both of which assert that the Retainer should be treated as a general unsecured claim.  One, Chowdary asserts that CHWWA never disclosed that it had a security interest in the Retainer until it filed the engagement letter in response to Chowdary's Objection, and two, CHWWA's engagement letter failed to "properly and unavoidably attach or perfect a lien in several respects" under Texas law.[75] In support of his second objection, Chowdary raises three sub-arguments. First, Texas Business and Commerce Code section 9.2039(a) states, "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment" and because the engagement letter expressly delayed the creation of the security retainer until the Debtor's petition date, an avoidable post-petition

---

[72] ECF No. 155 at 7 ¶ 22; *see Barron v. Countryman*, 432 F.3d 590, 595–96 (5th Cir. 2005); *In re IPS Systems, Inc.*, 205 B.R. 88, 89 (Bankr. S.D. Tex. 1997) (holding that the general rule in Texas is that a retainer is held in trust as property of the client, until applied to the bill of the attorney).

[73] *See* Tex. Bus. & Com. Code § 9.203(a).

[74] ECF No. 155 at 7, ¶ 22.

[75] ECF No. 156 at 4–5.

attachment of the security interest was effected.[76]   Second, the delayed attachment of the security

interest is likely an avoidable preference.[77]   Third, because the security interest did not attach until

the petition date, perfection of that security interest did not occur until the petition date, if at all,

which likely makes perfection a preference as well.[78]   Chowdary urges this Court to treat

CHWWA's claim as a pre-petition general unsecured claim.[79]

Citing *Dick Cepek* in support, Chowdary insists that "the facts and document [sic] involved

in each case clearly matter" and because CHWWA did not disclose as part of its Fee Application

that it had a security interest in the Retainer, CHWWA's claim to the Retainer should be considered

a general unsecured claim.[80]   In *Dick Cepek*, the Ninth Circuit said that a security interest in a

retainer "must be disclosed under § 726(b)."[81]   The court found that it did not need to decide

whether a security interest was actually created in the retainer because debtor's counsel failed to

disclose any security interest or equitable lien in that retainer when it filed its fee application.[82]   As

acknowledged by Chowdary, *Dick Cepek* involved a chapter 7 case, converted from chapter 11.[83]

Section 726(b) does not apply in a chapter 11 case.[84]   Therefore,  *Dick Cepek* is inapposite.

In *Atlas*, a Kentucky bankruptcy court noted that "[p]rior to commencement of a chapter

11 case, it is common for a debtor's professionals to obtain retainer agreements and fees to insure

compensation for costs anticipated during the pendency of the case[.]"[85]   And in *Armstrong Bank*,

---

[76] *Id.* at 5, ¶ 16(a).
[77] *Id.* ¶ 16(b).
[78] *Id.* ¶ 16(c).
[79] ECF No. 156 at 5.
[80] *Id.* at 4–5, ¶¶ 10, 17.
[81] *Dick Cepek, Inc. v. Yoo*, 300 F. App'x 497, 499 (9th Cir. 2008).
[82] *Id.*
[83] ECF No. 156 at 3, ¶ 8.
[84] 11 U.S.C. § 103(b) ("Subchapters I and II of chapter 7 of this title apply only in a case under such chapter.").
[85] *In re Atlas Contrs., Inc.*, 2004 Bankr. LEXIS 802, at *8 (Bankr. E.D. Ky. June 16, 2004).

a Florida bankruptcy court said "[i]ndeed, the Court might doubt the competence of a bankruptcy lawyer who accepts an engagement to represent a chapter 11 debtor without a retainer or similar assurance of payment."[86]

Here, both Debtor's application to employ CHWWA[87] and CHWWA's First Fee Statement[88] specified that Debtor paid CHWWA $75,000 pre-petition as a retainer for CHWWA's legal services. The employment application classified the retainer as a "classic retainer" as defined in *McDonald*,[89] but in its responsive brief, CHWWA now refers to the retainer as a "security retainer."[90] Nevertheless, as case law indicates, retainers are commonplace in chapter 11 cases and as Debtor's filings demonstrate, Chowdary had notice that a retainer was paid pre-petition for legal services in this case. Accordingly, Chowdary's objection that CHWWA's claim to the Retainer should be treated as a general unsecured claim because CHWWA did not give notice that it had a security interest in the Retainer lacks merit and is overruled.

As the Supreme Court has made clear, state law ordinarily supplies the definition of property rights in bankruptcy.[91] State law governs property rights after the filing of a bankruptcy case, including property rights attributable to attorney retainer agreements.[92] There are three types of retainer agreements: (1) classic retainers; (2) advance payment retainers; and (3) security retainers.[93] A classic or true retainer involves payment of a sum of money to secure the attorney's availability over a period of time. This type of retainer fee is earned when paid, since the attorney is

---

[86] *Armstrong Bank v. Shraiberg, Landau & Page, P.A. (In re Tuscany Energy, LLC)*, 581 B.R. 681, 686 (Bankr. S.D. Fla. 2018).
[87] ECF No. 20 at 2, 4, ¶¶ 6, 13.
[88] ECF No. 126 at 1–2, ¶¶ 1–4.
[89] ECF No. 20 at 2, ¶ 6 (citing *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 996–98 (Bankr. N.D. Ill. 1990)).
[90] ECF No. 155 at 7, ¶ 22.
[91] *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979).
[92] *Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005) (citing *Butner v. US*, 440 U.S. at 54).
[93] *Id.*

entitled to the money regardless of whether he or she actually performs any services under the agreement.[94]  Because the debtor has no further right to the money, it does not become property of the debtor's bankruptcy estate.  With an advance payment retainer, the client pays in advance for services the attorney is expected to perform on the client's behalf.[95]  Advance fee retainers paid prepetition from unencumbered assets become the attorney's property prepetition, subject to review by the bankruptcy court for "reasonableness."[96]

CHWWA claims that the retainer agreement entered into with Debtor is a security retainer and is property of the estate.[97]  A security retainer is created when a debtor pays counsel for prospective services.[98]  Until services are rendered by counsel, the attorney holds the funds for the debtor and the debtor retains an interest in those funds.[99]  Because the debtor retains an interest in these funds, they become property of the estate at filing subject to §§ 329 and 330.[100]  The engagement letter, attached as an exhibit to CHWWA's response brief, states:

> [Debtor has] agreed to deposit an additional $75,000 over what is currently in trust with [CHWWA] for fees and costs associated with this representation.  The retainer is not an estimate of what the likely final costs may be.  [CHWWA] will hold [Debtor's] funds in a trust account.  The retainer will be treated as a prepayment of legal fees, subject to a return of any amounts not actually earned.  As of the petition date, any unused portion of the retainer will convert into a retainer securing payment of any post-petition fees approved by the bankruptcy court.

---

[94] *See SEC v. Interlink Data Network of Los Angeles, Inc.*, 77 F3d 1201, 1205 (9th Cir. 1996).

[95] *See In re Boulder Crossroads, LLC*, 2010 WL 4924745, at *16 (Bankr. W.D. Tex. Dec. 1, 2010).

[96] 11 USC § 329; *see Barron v. Countryman*, 432 F.3d at 596.

[97] ECF No. 155 at 7, ¶ 22 (citing ECF No. 155-1); *In re IPS Sys.*, 205 B.R. 88, 89 (Bankr. S.D. Tex. 1997) ("A retainer becomes property of the estate upon the filing of a bankruptcy. 'The general rule in Texas and elsewhere, is that a retainer is held in trust, as property of the client, until applied to the bill of the attorney. This will mean that such retainers are, in the usual case, property of the bankruptcy estate.'") (quoting *In re Office Products of America, Inc.*, 136 B.R. 964, 970 (Bankr. W.D. Tex. 1992)).

[98] *Id.* (citing *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 999 (Bankr. N.D. Ill. 1990)).

[99] *Barron*, 432 F.3d at 595–96.

[100] *Id.* at 596.

The Retainer contemplated by the engagement letter falls squarely within the definition of "security retainer" espoused by the *Barron* court—money held by CHWWA for prospective legal services subject to refund of any amounts in excess of billed hours.

This Court's inquiry does not end there, however. This Court must look to Texas law to determine what kind of interest CHWWA has in the Retainer. The parties agree that Texas Business and Commerce Code section 9.203(a) controls in this case. That section provides that a security interest does not attach unless the collateral is in the possession of the secured party pursuant to an agreement, value has been given, and the debtor has rights in the collateral.[101] Although the engagement letter was generated on October 15, 2020, Debtor expressly agreed that the provisions therein were effective on October 16, 2020,[102] the same day Debtor's voluntary chapter 11 petition was filed.[103]

Under Texas law, a security interest attached to the Retainer when the requirements of section 9.203(a) were satisfied by: (1) Debtor's deposit of $75,000 with CHWWA; (2) CHWWA's promise to provide pre-and post-petition legal services;[104] and (3) Debtor's retention of rights in the $75,000 because those funds were held in trust by CHWWA for prospective services.[105] Although Chowdary's argument is that CHWWA's engagement letter failed to create a security interest, Chowdary does not dispute that the requirements of section 9.203(a) were satisfied. Chowdary merely asserts that any security interest created, and any perfection of that interest, is avoidable as a preference. However, any claim that the security interest created by the Retainer is an

---

[101] *In re IPS Sys.*, 205 B.R. at 89 (citing TEX. BUS. & COM. CODE § 9.203(a)).
[102] ECF No. 155-1 at 1, 5.
[103] ECF No. 1.
[104] ECF No. 155-1.
[105] *Id.*

avoidable preference must be brought separately in an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001, not in objection to CHWWA's fee application.[106]  Accordingly, this Court finds that because the requirements of Texas Business and Commerce Code section 9.203(a) were satisfied, a security interest was created in the Retainer and Chowdary's objection that such interest is not secured and should be avoided as a preference is overruled.

### 4.   Whether Chowdary raised a credible argument that CHWWA is in violation of § 1195 of the Bankruptcy Code regarding the $9,999 portion of the Retainer

CHWWA asserts that Chowdary has not raised any legal grounds demonstrating that CHWWA is in violation of § 1195 after the Court approved CHWWA's Application.[107]  Section 1195 states that "[n]otwithstanding section 327(a) . . . a person is not disqualified for employment under section 327 . . . by a debtor solely because that person holds a claim of less than $10,000 that arose prior to the commencement of the case."[108]  CHWWA contends that it "was owed fees and expenses by the Debtor in the amount of $21,696.91 for unreleased time that was not billed prior to the bankruptcy filing."  CHWWA wrote off $11,697.91 in fees and now seeks only $9,999 from the Retainer.[109]  As such, the $9,999 sought by CHWWA is clearly permissible under § 1195.

However, in his Fee Statement Objection, Chowdary attempts to bring § 1195 into issue by pointing out that the statute is silent regarding the status of a non-disqualifying pre-petition claim of a debtor's attorney after the bankruptcy is filed.  As discussed *supra*, Chowdary's argument only muddies the waters.  While he is correct that § 1195 is silent with regards to the status of the claim, the issue is not controlled by the Code, but rather by state law.  The Fifth Circuit has

---

[106] FED. R. BANKR. P. 7001.
[107] ECF No. 155 at 7, ¶ 21.
[108] 11 U.S.C. § 1195.
[109] ECF No. 155; *see* ECF Nos. 126, 153.

held that "state law ordinarily supplies the definition of property rights in bankruptcy," including the interpretation of property rights attributable to attorney retainer agreements.[110]   Accordingly, Chowdary's objection that CHWWA is in violation of § 1195 is overruled.

### 5.  Whether Chowdary's Fee Statement Objection is ripe

CHWWA asserts that Chowdary's Fee Statement Objection is not ripe because it rests entirely on hypothetical and abstract grounds: it seeks to limit CHWWA drawing on its retainer to the extent such funds were part of Debtor's fraudulent transfer scheme.[111]   The Court already denied Chowdary's request to limit CHWWA drawing on its Retainer to the extent such funds were part of Debtor's alleged fraudulent transfer scheme yet to be proven.   As such, CHWWA's argument need not be addressed here.

### 6.  Whether Chowdary's First Interim Application Objection fails to apprise CHWWA of the substantive allegations and factual contentions

CHWWA argues in its Response to Chowdary's First Interim Application Objection that it fails to apprise CHWWA of the substantive allegations and factual contentions being raised in that it broadly claims that the Fee Application is excessive and duplicative of efforts, without providing specific examples to support such allegations.   As discussed herein, Chowdary's First Interim Application Objection essentially renews the arguments in its Fee Statement Objection and reserves its right to object to CHWWA's final fee application.   Additionally, the Court has already addressed each argument contained in Chowdary's Fee Application Objection, and as set forth *supra*, the Court need not address the latter argument since no final fee application has been submitted.   Accordingly, Chowdary's First Interim Application Objection is overruled.

---

[110] *Barron v. Countryman*, 432 F.3d at 595; *Butner v. United States*, 440 U.S. at 54.
[111] ECF No. 155.

### 7. Whether Chowdary's First Interim Application Objection fails to comport with notice requirements

CHWWA argues in its Response to Chowdary's First Interim Application Objection that it fails to comport with notice requirements under Bankruptcy Local Rule 9013-1(d). CHWWA asserts that because Chowdary's Objection seeks an order from the Court on CHWWA's First Interim Application, Chowdary was obligated to serve all the entities listed under BLR 9013–1(d).[112] CHWWA contends that the certificate of service attached to Chowdary's First Interim Application Objection was only served on parties registered with the Court's electronic noticing system. Such certificate of service, argues CHWWA, fails to comport with BLR 9013–1(d), as there are other entities in this Case not currently registered with the Court's electronic noticing system. Lastly, CHWWA asserts that Chowdary's First Interim Application Objection does not have a proposed order attached, as contemplated under BLR 9013–1(h), and as such, Chowdary's Objection should be overruled in its entirety.

Here, the Court already overruled Chowdary's First Interim Application Objection, but assuming *arguendo* that Chowdary failed to comport with notice requirements under Bankruptcy Local Rule 9013-1(d), CHWWA's response is misconceived. CHWWA does not argue that it did not receive proper notice, but rather, argues that "other entities" did not receive proper notice. CHWWA does not name the other entities, nor does CHWWA demonstrate grounds to warrant their position as a spokesperson for any other parties not properly noticed. Since CHWWA received notice, this argument is without merit. While the Court admonishes any non-compliance with the procedural rules to which a party is bound before this Court, Chowdary's First Interim Application Objection is not vitiated on these grounds.

---

[112] ECF No. 176.

### 8.   Whether Chowdary's First Interim Application Objection is untimely

CHWWA argues in its Response to Chowdary's First Interim Application Objection that Chowdary's First Interim Application Objection was, inter alia, untimely filed.  Rule 2002(a)(6) provides that all creditors must be given 21–days' notice by mail of a hearing on an entity's request for compensation that exceeds $1,000.  Pursuant to Rule 9007, which allows the Court to regulate the form and manner in which notice shall be given, BLR 5005–1 provides that the notice of electronic filing automatically generated by the Court's CM/ECF system constitutes service on all entities registered for electronic service in the Case.[113]  For parties not registered for electronic service in the Case, three days are added to the prescribed 21–day notice period ("*Mailbox Rule*").[114]

CHWWA asserts that its Fee Application concerns compensation over $1,000, and thus all parties are given 21–days' notice, unless the Mailbox Rule applies.[115]  The First Interim Application and Notice was served electronically on June 1, 2021 and served by mail no later than June 2, 2021.[116]  Thus, any party registered for electronic service in this Case was required to file a response to CHWWA's First Interim Application by June 22, 2021.  Here, Chowdary was served CHWWA's First Interim Application on June 1, 2021, and Chowdary's Objection must have been filed by June 22, 2021.  Rule 9006(b)(1) governs the procedures for seeking an extension of time, stating:

---

[113] *See* BLR 5005–1(a) and (c); UNITED STATES DISTRICT & BANKRUPTCY COURT, SOUTHERN DISTRICT OF TEXAS, ADMINISTRATIVE PROCEDURES FOR THE FILING, SIGNING, AND VERIFYING OF DOCUMENTS BY ELECTRONIC MEANS IN TEXAS BANKRUPTCY COURTS, § II (A)(5) (stating that one registered for electronic notice consents to accept service by electronic means, excepting service of process of a summons and complaint in an adversary proceeding under Rule 7004, or service of a subpoena under Rule 9016).
[114] FED. R. BANKR. P. 9006(f).
[115] ECF No. 176.
[116] ECF Nos. 153, 154.

In General. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Chowdary failed to seek an extension before June 22, 2021.  Chowdary also did not file a motion seeking an extension of the deadline under excusable neglect.  As argued by CHWWA, Chowdary's Objection filed on June 29, 2021 is deemed late.  Accordingly, Chowdary's First Interim Application is overruled, alternatively, on these grounds.

### IV.    Conclusion

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED July 20, 2021

Eduardo Rodriguez
United States Bankruptcy Judge